All right, our next case is 21-6045 Goodwill Industries v. Philadelphia. So Mr. Priest and Mr. Goldman. Okay. Welcome and let's see. I thought I saw Mr. Priest. There he is. When you're ready, you may proceed, sir. Thank you, Your Honor. Good morning. My name is Jim Priest. I am the CEO of Goodwill Industries of Central Oklahoma and also an attorney representing them in this appeal. And Goodwill, most of you probably know, is a nonprofit organization. Our mission is to help people overcome challenges to employment. We provide much needed services and job placement and job training to those at the margins of our society. But that mission was interrupted in March of 2020 when Governor Stitt elected to issue a mandate closing all non-essential services. And as a result, we were closed for a number of weeks and lost a significant amount of revenue through our retail stores. And so the question presented, the overarching question to the court, is whether or not Goodwill's all risk policy, which was provided by Philadelphia, means what it says. Does it provide coverage for all risks unless they're specifically excluded? So I want to outline three main points, but I know this court is very aware that we're in a context of a motion to dismiss under Rule 12b. And as Judge Matheson wrote just a couple of months ago in the Asha Yeed versus Currington case, we review a de novo. We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim. We accept all well pleaded factual allegations in the complaint and we view them in the light most favorable to the non-moving party. And the circuit has also said we must bear in mind this is a review of a motion to dismiss which are viewed with disfavor and rarely granted. So that's the context in which we present these issues. But I think the most important issue for the court's determination right at the threshold is the issue of abatement and certification. When I was trying jury cases, I would often start my closing argument by saying, what do we know for sure that there's no argument about? And there are a few things that we know for certain about the issue of certification and abatement. One is that that process can avoid mistakes. There was a case not long ago in which Judge Timkovich was a participant on the panel. Hamilton versus Northfield Insurance rose out of the eastern district of Oklahoma. The district court denied attorney's fees to a successful plaintiff. It was taken up on appeal and through judge panel in an opinion authored by Judge McKay found that the trial court made the correct decision and affirmed the denial of attorney's fees. Shortly thereafter, what the court referred to as an impassioned petition for rehearing was filed and it was granted. And at that point, Judge McKay determined that the question should be certified to the Oklahoma Supreme Court. Judge McKay said in light of the lack of precedential decisions on point, particularly from the Oklahoma Supreme Court and in furtherance of comedy and federalism, we conclude the Oklahoma Supreme Court should have the opportunity to answer these important questions about the insurance statute. That's because insurance law is a matter of state law, and we're governed here by what is happening in the state of Oklahoma. Have there been any federal courts that have yet gone your way on direct physical loss in these COVID shutdown cases? There have been, Your Honor, and I concede that the vast majority of the federal cases have found in favor of the interpretation proffered by Philadelphia. But all of those cases deal with unique state law, and we have no cases with any kind of basis in Oklahoma Supreme Court law. So the fatal flaw in all those cases that they were states other than Oklahoma? Yes, sir. Is there something unique about Oklahoma insurance law that's different than California or Ohio, et cetera, et cetera? Well, I think there's a number of things unique, and it's evidenced by the four trial court decisions that have granted summary judgment to the claimants in this situation, finding that the word loss does not require tangible impact. And so Oklahoma has long been a state that has carefully regulated insurance companies, both in terms of regulatory legislation and judicial decisions. And so in a moment, I'll get to the Choctaw, the Cherokee case, the Fort Sill Apache case. All of those decisions favor the interpretation that we're offering. Would any of those cases make their way to the Oklahoma Supreme Court, or are they all going to stay in? They're all kind of in suspense right now. Two of the cases have been consolidated on a fast track appeal before the Oklahoma Supreme Court. So the Cherokee Nation case and the Choctaw Nation case have both been consolidated. We expect a decision very shortly out of the Oklahoma Supreme Court. The other two cases that are favorable are in suspense, on hold, waiting for the Supreme Court to rule. And then the final case, which I think is the Kickapoo case out of Pot County, Pottawatomie County. It was initially decided in favor of the insurance company, but it's currently under reconsideration. And that court is also putting it on hold until the Oklahoma Supreme Court rules. Well, if the court, is there any reason for us to certify this case, then, if it's pending over already in the Oklahoma Supreme Court after oral argument already? Well, I think there is a benefit to certifying it because the Cherokee and Choctaw decisions, all the tribal cases, are under a different kind of policy. Although it's a distinction without a real difference, in my opinion. But if there's any concern that those pending cases might not answer the questions that this court has, then certification would be the most appropriate way to get the precise answers that we need under this ISO all risk policy. What's the best Oklahoma Supreme Court case, then, that would allow you to prevail under your interpretive theory? I'm sorry, could you repeat that? What Oklahoma case, what's your best case under Oklahoma law that would allow you to prevail here, at least get to discovery? Yeah, and this is a really interesting part. I was an insurance defense lawyer for many years. And this is the only area of law that I've ever been exposed to where the tie goes to the runner, as in baseball. So, the Oklahoma Supreme Court has ruled that if there is an ambiguity in the insurance contract, and there are two reasonable interpretations, equally reasonable, then coverage must be found. And if that's the case in this situation, which I think it must be, given the wide diversity of opinions from trial courts and appellate courts all across the country, there are reasonable interpretations that loss includes non-tangible loss of property, which is what happened to Goodwill here. If I can, back to the case, Judge Timovich, that you were involved in, the Hamilton case. When the certified questions were answered by Judge Gurich from the Oklahoma Supreme Court, the case was returned, and Judge McKay passed away in the interim, and so you authored the opinion that found that the earlier trial court decision and the earlier appellate court decision authored by Judge McKay were wrong, in light of the certified answers from the Oklahoma Supreme Court. And that's what I think is important to learn a lesson from this time here, that we can avoid the problem that was in the Hamilton case by certifying and abating and getting the answer from the Oklahoma Supreme Court. We know for sure there are four Oklahoma trial court decisions right now favoring the interpretation that says loss can be a non-physical impact kind of thing. And that's buttressed by just looking at the language of the policy. The operative language talks about physical loss of, or damage to, property. And if it was required for loss to have a physical damage aspect to it, then loss would be superfluous. And that goes against the Oklahoma interpretation of contract principles that we try to avoid a superfluity, wherever it exists. So, because there's a disjunctive, the word or, between loss and damage, they must mean two different things. Well, why can't they just be degrees of the same thing, where a damage is not a complete loss? In other words, the shingles get blown off, but the roof is still intact. Well, there'd be no necessity, really, to grade or put damage on a gradient. And it could have said loss and damage, but it's in the disjunctive, which a number of courts have placed a great importance on, that it requires something different. And remember, of course, these insurance contracts, they're contracts of adhesion. They're written by the insurance company very carefully, and they determine what definitions to put in and what definitions to leave out. A number of courts, including the Choctaw and the Cherokee decisions, talk about the fact that for years, courts have been begging insurance companies to include a definition of these very terms. And yet, the insurance company has turned a deaf ear to that. So, the fact that it's not defined in the policy, and it is subject to a variety of common sense definitions, means that the court, finding two equally reasonable interpretations of the word loss, must find in favor of the plaintiff. And it's interesting— Counsel, counsel, could I just explore this a little bit with you with some examples? If, let's say, the direct physical loss and damage to, those two phrases, I think you argued they must have independent meaning. Would a theft of property be a direct physical loss but not be damage to property? It exactly would be. Judge Matheson, you've anticipated what I was just going to say next. At page 12 of Philadelphia's opening brief, they, in fact, concede your very point. They acknowledge that, in this language, put simply, property insurance ensures buildings and business personal property. If there is no loss of property, per-en, such as by theft or total destruction, close per-en, or damage to property, such as by fire or water damage from a burst pipe, there cannot be a covered claim. So, that language on page 12 of their opening brief concedes the point. A theft would not have physical damage. A theft would simply be property that was lost. And that's what happened with Goodwill's property. It was lost for its intended purpose by the closure orders, and there is coverage. The other point that I think is important to remember. Well, before we leave that, let me try another one on you. Okay. Suppose Goodwill has a pause in operations due to lack of workers or lack of inventory. As you read the policy, should you have coverage for resulting losses? Probably not. I can't think of any immediate instances where there would be, because a fortuitous event is what has to precipitate. And I don't think a lack of staff or inventory would be a fortuitous event. Okay. Can I just shift gears, because we haven't talked at all about the virus endorsement exclusion. Why isn't that an independent basis to affirm the dismissal here? Right. And that's my third point, but I'll be glad to jump to that. The virus exclusion itself, as it was pled in our original petition filed in state court, we said that there was no consideration, and it was simply appeared in the policy. The judge said, interestingly, Judge Russell said that we did not have an obligation to prove a negative. And yet, he essentially required us to do that. He said, you haven't pled enough information to overcome that objection or the exclusion. To grant a motion to dismiss on an affirmative defense like the exclusion is a very dangerous thing to do. And, Judge Phillips, you had a case not long ago where you talked about this. Let's see if I can find it here. You talked about the fact that it would be a rare occasion. This is in the Exum versus Bristol-Meyers. No, I'm sorry. That's the wrong case. Here it is. Fernandez versus Clean House. It was a 2018 case that you participated in, Judge Phillips, reversing an order dismissing a claim on a 12B motion based on an affirmative defense. And you said, to be sure, your panel said, to be sure, on occasion, it's proper to dismiss a claim on the pleadings based on affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements. Only when a plaintiff pleads itself out of court, that is, admits all the ingredients of an impenetrable defense, may a complaint that otherwise states a claim be dismissed under Rule 12B. So I think the virus exclusion, at the minimum, I don't think it applies here. And there's cases that talk about a virus is different than a pandemic. But even if there's an arguable basis for it to apply, we never had our chance in court to show that it wasn't enforceable. And it's an affirmative defense that we should have an opportunity to prove our side of the case. All right, Counsel. Thank you. Your time's expired. Let's hear from Mr. Goldman. Thank you, Your Honor. Stephen Goldman, Counsel for Philadelphia Indemnity Insurance Company. Since the briefs in this case were fully submitted, the issues presented here were addressed by the 6th, 9th, and 11th circuits. And those decisions, taken together with the 8th circuit's decision in oral surgeons, which was cited in our brief, a total of six federal appellate decisions covering the law of 13 states have unanimously found that coverage does not apply for the types of losses alleged in Goodwill's complaint under very similar policies. All four circuits found that there was no direct physical loss under policy provisions similar, and in some cases, identical to those in issue here. And the Mud Pie and Chattanooga decisions from the 9th circuit also reached and held applicable the virus exclusion. Although in its brief, Goodwill attempts to distinguish the 8th circuit's oral surgeons case because it involves slightly different policy language than the policy in issue here, the relevant language in Goodwill's policy is identical to that issue in the 6th circuit's decision in Santos and the 9th circuit's decision in Mud Pie. Goodwill has failed to provide any reason why Oklahoma law should be any different than the law of Ohio decided in the Santos decision, the law of California decided in the trilogy of 9th circuit cases, the law of Iowa decided by the 8th circuit in oral surgeons, the law of Georgia decided in the 11th circuit decision in Galbraith, and the other nine states that are addressed in the Chattanooga decision by the 9th circuit. And in fact, I note, Your Honors, that counsel for the appellant actually did not answer Judge Timkovich's question is, what's your best case in Oklahoma as to why coverage here would apply? And all I heard was a reference to four state unreported state court decisions in the Oklahoma trial courts. And those decisions, I will note, as is the common practice in the Oklahoma state courts, where the actual wording of the decisions themselves were authored by the plaintiff's lawyers, which is the common question. If if it were the case that a virus adhere to the surface of the goodwill's premises or, you know, if their clothing or whatever product they have, if the virus or a disease were kind of physically attached to those. And so, you know, the governor ordered the patrons not visit establishments where they might touch things and, you know, contract a disease that way. But if that if that were the scenario, would there be would that be direct physical loss and a covered occurrence? I do not believe that would be a direct physical loss. And in fact, in the 11th Circuit Galbraith decision, they made reference that it wouldn't be. And the reason it wouldn't be is it would be a essentially an ephemeral loss. The which, of course, is not our case here. And it does raise a different issue. But but it would be an ephemeral loss because it can be cleaned within a few hours or even even left to its own devices expires after about 72 hours. So there was so there was some suggestion at the beginning of Covid that, you know, when you could catch it from touching surfaces and items and took a long time for the government to back off from that view. Right. The current I think the current literature is one in 10,000 chance based on the CDC's current literature. But in any event, that's not alleged here. And it's conspicuously absent, as Judge Russell pointed out, because the and it is a different it is it does raise a different issue is a question of whether Covid on the premises is it constitutes a direct physical loss or damage to the property. But that's not this case. This case does not allege that. Judge Russell in his trial court decision noted it doesn't. This is a pure loss of use case. And these these complaints in these cases tend to fall into these sort of buckets. Well, cases like this one, which appear loss of use cases, cases where the allegations are virus on the premises, which raises a different analysis that's not that's not brief here. But all of the cases that have hit the federal appellate courts or any appellate court so far that have found that a pure loss of use, as is alleged here, are not covered. And as the Sixth Circuit recently observed in affirming the dismissal of a nearly identical case involving identical policy provisions in the Santos case, the any complaint that fails to allege facts establishing there was a direct physical loss of damage to property must must fail. The complaint here is not does not make those allegations. For example, there's no allegation the windows or doors of any of the 53 insured locations were broken. There's no suggestion the inventory in any Goodwill store or warehouse was stolen, discolored or saturated with water, nor does the plaintiff allege that the any shelving or clothing racks were bent, broken or otherwise physically harmed. In fact, this case is somewhat extraordinary. Are these types of cases are somewhat extraordinary in the world of property insurance law, which I've been doing for a long time because these are the first types of cases I've ever seen where no claim whatsoever has been made under the property damage provisions of the policy. There's no claim for cleaning because there was nothing to claim under these allegations. There's no claim anything at all happened to this to the property that was physical and the words physical critical words in the definition. There may have been some kind of lost goodwill. We don't we don't contest that, but there was not a direct physical loss, which are the words of the policy. And that's that's where the difference is. The only thing that's alleged is the government orders temporarily caused goodwill to stop using its its property. The appellant here advocates for the application of policy coverage that ignores the word direct physical. Instead, they try to argue that simple loss of use is a covered loss. But that's that argument's been rejected by the four other circuits so far. And and in fact, when we take out the cases that do allege virus on the premises, which involves different set of issues, not brief care, the cases like the state trial court decisions here that were authored by lawyers at the invitation of state court judges and the cases that that all we're left with is is two or three cases in the entire country. That seemed to suggest maybe there's a cause of action that should survive a motion to dismiss and in opposition to hundreds and hundreds of cases that that have found found otherwise. And that's why we have federal courts to to to avoid this kind of home cooking that sometimes that sometimes I'm not suggesting anything about the courts here, but that sometimes does does affect judicial determinations in the state courts. So, counsel, counsel, why shouldn't we hold off on this? I'm not talking about certification, but why shouldn't we obey? See what the Oklahoma Supreme Court does in Choctaw and Cherokee Nation. Well, the those cases are very different than this case and involve very different policy language. And in fact, each one of those cases that was found for the for the policyholders went to great lengths to distinguish not just any federal case, this specific federal case and saying it's completely different. And in fact, the most recent of those cases, they was the Fort Sill Apache tribe case that was submitted with Mr. Priest 28 J letter. And that that that decision begins with a metaphor to a an ostrich egg farmer and a chicken farmer saying they're they're completely different, completely different things. And the ISO policies, which this is in, is a is a completely different thing. And they go they go through a number of reasons, as does refer the court to Judge Russell's decision in the Govinda case, which was subsequent to his decision. And in this case where he he notes that the the policy in those those cases provides insurance against all risk. And the words all risk are not used in our policy of direct physical loss or damage occurring during the period of this policy. And they make a big point in all those decisions. It doesn't say to property. And of course, our case does the they actually in those cases allege that repairs were made. And while we don't agree with their characterization of what constitutes a covered repair covered expense under the policy, they allege that in those cases, they allege that putting up partitions and the like with some kind of direct physical loss. So that's a fundamental difference that is pointed out in in in those cases. And and then probably most significant, there's no virus exclusion in those in any of those cases. They they all they have a micro exclusion from microorganisms. There is a issue that's debated in the case law, whether a microorganism, whether a virus is a microorganism. And there's different causation language in the presence of the virus exclusion, in this case, color or interpretation of the loss provision. In other words, why do you need the virus if you're already covered by the loss? Well, as the Sixth Circuit noted, the insurance policies are superfluous. The domain of insurance policies, for exactly the reason that we're here about, it's what we call belt and suspenders exclusion. It shouldn't be direct physical loss in the first place. But but there is a exclusion there to make it doubly and triply clear, as do other exclusions in the policy, such as the loss use exclusion, such as the action decision exclusion, such as the law ordinance decision that that are what commonly is referred to as belt suspenders. And I refer the court to the Sixth Circuit's decision, which goes through that issue with regard to insurance companies in the Santos decision and makes a significant point that it's kind of insurance policies. It's sort of the home of superfluous in contracts for this exact reason, so that we're not here questioning whether it's direct physical loss. We're not here questioning any of these things. It's the virus exclusion makes it doubly and triply clear as to as this law ordinance exclusion. And as to and as does the loss of you, we actually have an exclusive counsel. Can I just ask you on the on the virus endorsement exclusion? Does the absence of an anti concurrent causation clause. Complicate your reliance on the exclusion. I do not believe it does, Your Honor, and numerous courts, including the Ninth Circuit in mud pie and in Chattanooga baseball have found that the virus exclusion applies in exactly this factual scenario under an efficient proximate cause test. The in fact, the anti concurrent cause language isn't even enforceable under California law. It is under Oklahoma law. But but the the and the reason is that the virus was unquestionably the efficient proximate cause of the loss in Chattanooga baseball. The court went through a fairly complex analysis of the in ruling on the application of virus exclusion in 10 different states, including California, went through a fairly complex analysis of causation and found that the virus in the absence of an efficient proximate cause provision. Did did apply and Oklahoma law as decided in our brief is is identical, essentially, to the law of California in that in that regard. And there is case law and that that's the mid continental casualty and the Doinson versus State Farm cases that both held that Oklahoma follows the efficient proximate cause analysis. In this case, it's fairly, I think, does it follow it for coverage or does it follow it also for exclusion? Certainly there are cases efficient proximate cause for coverage. And certainly you can cite cases that have done that for exclusion now in this very context. But does Oklahoma have a case that says it also applies to exclusions, not just coverage? Yes, Your Honor, I believe it does. In fact, it wouldn't really come up in the context of coverage in a what's commonly referred to, although we don't use the words all risk policy. In other words, the loss is covered. The cause of the loss is a covered cause of loss unless it's excluded under the terms of this policy. So the efficient proximate cause and it's just refer the court to the mud pie. But and to those two Oklahoma Supreme Court decisions I've just referred to, it comes up exactly in the context of an exclusion because exactly this reason. If you have an excluded cause, the argument is, is that such an attenuated cause that it's that it's not it shouldn't exclude coverage or or is it the efficient proximate or dominant cause? And here it's the efficient proximate and dominant cause. And that's what's discussed in the mud pie in Chattanooga. Can we get to the exclusion given their position that there was a failure of consideration? Yeah, that's it. Paul, Tom, Tom Lee issue, Your Honor. And that's why Judge that's why Judge Russell did not give credence to it. There's no suggestion that there's no facts alleged whatsoever, suggesting there's a lack of consideration. The policy we know was issued with the virus exclusion was a renewal of an earlier policy, but it was issued with the virus exclusion in it. We know that from the policy forms themselves, which are attached to the complaint. And in in the schedule of forms that said the appellants appendix to page 72, which specifically lists those exclusions with the language forms and endorsement applying to this coverage part and made part of this policy at time of issue. So there's no question. And that's attached to the complaint and pursuant to Rule 10C. It's considered to be part of a part of what the courts should consider in ruling on a motion to dismiss. And there's no there's no argument or logic to or facts, suggesting there was a lack of consideration that that was the policy was charged for those paid for. That was part of the policy that was sold. All right, counsel. Thank you. Your time's expired. We appreciate the arguments this morning. Your excuse in the case is submitted. Thank you. Thank you. Your Honor, if I could have a minute and a half in light of Mr. Goldman's going over. I do want to answer your question, Judge Tinkovich. The Oklahoma court. All right. You can you can have 60 seconds. Thank you. The Oklahoma court decisions that I think are most on point to your question, Oklahoma attorney mutual versus Cox 2019 Oklahoma civil appellate 25 and Sierra versus a state of Broughton. Okay, 82. When an insurance term or phrases ambiguous words of inclusion will be construed in favor of the insured. All right, counsel. Thank you. Your case is good.